**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Michael H. HUNTER, Defendant–Appellee.**

**No. 90–30252.**

United States Court of Appeals, Ninth Circuit.

Submitted October 8, 1992 *.

Decided Feb. 3, 1993.

As Amended March 3, 1993.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Kenneth R. Parker, Asst. U.S. Atty., Seattle, WA, for plaintiff-appellant.

David G. Skeen, Port Townsend, WA, for defendant-appellee.

Before: FARRIS, LEAVY and TROTT, Circuit Judges.

TROTT, Circuit Judge:

The United States government appeals the decision of the district court to release Michael Howard Hunter from observation and treatment at the Federal Medical Center at Rochester, Minnesota. The major issue in this appeal is whether the court may grant a defendant's pro se motion for a discharge hearing under 18 U.S.C. § 4247(h) (1988) once he has been committed to a psychiatric facility under 18 U.S.C. § 4244 (1988), or must such a motion be made by his counsel or legal guardian. We have jurisdiction under 28 U.S.C. § 1291 (1988), and we hold that the district court may not grant such a motion.

I

FACTS

On December 29, 1987, Michael Howard Hunter made a telephone call to the U.S. Air Force Recruiting Office in Lynwood, Washington. When a sergeant answered the phone, Hunter stated: "My name is Mike Hunter. I am in Snohomish County Jail, and when I get out, I am going to kill the President." At that time, Hunter was

being detained in the Snohomish County Jail on local charges.

That same day Hunter sent a letter to the United States Courthouse in Seattle, Washington. In the letter addressed to District Judge William Dwyer, Hunter wrote:

> To: Judge William Dwyer:
> Certify record to U.S. Supreme Court
> RE: DISMISSAL BY REASON
> I allege the Court has a Cuban-style or Russian-style manner of doing justice—that the Court employs criminals, that I detest each and every federal court judge now on the federal bench in Seattle, Tacoma and I demand dismissal by reason of bias and prejudice that Dwyer, Rothstein, McGovern etc. are fools who abused the power to give rich-wealthy (over) the square and someday I am waking you all up with a pistol in each hand! That I am not an American citizen that I will do anything in my power to destroy the system—that I devote my life to superseding everything you sons-of-bitches stand on. And you can take that to your next Hawaiian conference. Submitted Michael Howard Hunter.

The other individuals referenced in the letter apparently are Federal District Judges Barbara J. Rothstein and Walter T. McGovern.

On October 25, 1988, Hunter was convicted in a jury trial for threatening the life of the President of the United States, in violation of 18 U.S.C. § 871 (1988), and for threatening to assault federal judges, in violation of 18 U.S.C. § 115 (1988). Prior to sentencing, Hunter moved the court to conduct a psychiatric evaluation pursuant to 18 U.S.C. § 4244(a). As a result of that evaluation and hearing, Hunter was determined to be mentally ill and was committed to the Federal Medical Center in Rochester, Minnesota, for psychiatric care and treatment. The court imposed a provisional eight year sentence for the convictions as required by 18 U.S.C. 4244(d).

On February 28, 1990, Hunter petitioned the court to conduct a hearing under 18 U.S.C. § 4247(h) to determine if he should be discharged from the psychiatric facility.

The court subsequently ordered a hearing on June 1, 1990. After hearing the testimony of a government doctor, the district court determined that Hunter no longer required hospitalization. It terminated the commitment and imposed a final sentence of 27 months on June 21, 1990.

The government appeals the propriety of the hearing and the subsequent sentence which was imposed.

## II

### DISCHARGE HEARING

The government contends the district court should not have granted Hunter's pro se motion for a discharge hearing. Whether the statutes authorize the district court to grant such a motion is a question of law we review de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ Once an individual has been committed pursuant to 18 U.S.C. § 4244(d), there are only two methods by which that person may be deinstitutionalized. Under one method, the director of the facility in which the defendant is hospitalized may file a certificate with the court stating the defendant is no longer in need of care:

> When the director of the facility in which the defendant is hospitalized pursuant to subsection (d) determines that the defendant has recovered from his mental disease or defect to such an extent that he is no longer in need of custody for care or treatment in such a facility, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment.

18 U.S.C. § 4244(e). The other method by which a person may be deinstitutionalized is provided in 18 U.S.C. § 4247(h):

> Regardless of whether the director of the facility in which a person is hospitalized has filed a certificate ... counsel for the person or his legal guardian may, at any time during such person's hospitalization, file with the court that ordered the commitment a motion for a hearing to deter-

mine whether the person should be discharged from such facility....

18 U.S.C. § 4247(h).

Here, Hunter himself filed a motion, ostensibly pursuant to § 4247(h) requesting a discharge hearing under the statute. It is not clear from the record whether the district court granted that motion. The court did order the government to respond to Hunter's motion. Its April 6, 1990, order directing a discharge hearing is entitled "Order *Granting* Hearing Pursuant to 18 U.S.C. § 4247(d)." (Emphasis added). Thus, it would appear from the record that the court granted Hunter's motion. Section 4247(d) itself certainly provides no authorization for a district court to grant such a hearing sua sponte.

Whatever the basis for the court's April 6 order, that order was not authorized by the statutes, which require the director of the facility or the patient's attorney to request a discharge hearing. The director of the Federal Medical Center in Rochester in which Hunter was being treated did not file such a certificate in this case. In fact, Hunter's doctors actually opposed his release at that time. In a letter to the court on March 22, 1990, Hunter's doctors at the Medical Center stated: "Mr. Hunter continues to suffer a major mental illness. His lack of insight into his mental illness and chemical dependency remains unchanged. He continues to require a supervised and structured environment to ensure medication compliance." Nor did Hunter's attorney file a request under § 4247(h). At the time of the original § 4244 commitment hearing, the court appointed a Seattle attorney, David Marshall, to represent Hunter. Marshall remained appellant's attorney of record throughout that period and represented him at the deinstitutionalization hearing in question. However, Marshall did not file a motion with the court to conduct that hearing as authorized by § 4247(h).

It is not clear why the district court even considered Hunter's pro se motion. Only four months earlier, on October 30, 1989, the court had rejected outright just such a pro se motion by Hunter. At that time the court stated: "A close reading of the language of the statute suggests that Hunter *himself* may not move for the hearing. The section states that 'counsel for the person or his legal guardian' may move.... Thus, because Hunter himself rather than his counsel or legal guardian has moved for the hearing, the motion should be denied." The district court did not indicate why it reached a different conclusion four months later.

We agree with the conclusion reached by the district court in October, 1989. Only the director of the facility or the defendant's attorney or guardian may formally request a hearing to determine whether the defendant should continue treatment in a psychiatric facility. The defendant himself may not make such a request pro se, nor may the district court conduct such a hearing sua sponte. The attorney who was appointed at the time of the initial commitment hearing conducted under § 4244 can remain the defendant's attorney of record and can file such motions in defendant's behalf, as authorized under § 4247(h).

Under the statute, the district court could direct a discharge hearing only upon a motion by Hunter's counsel or guardian in the absence of the director's certificate. Therefore the judgment and final sentencing of the district court is reversed, and this case is remanded so the district court may reinstate the original provisional sentence and recommit Hunter for further care and treatment as necessary.

### III

Because we vacate the sentence imposed by the district court after the discharge hearing, we need not address the issues raised by the government concerning the new sentence which was imposed. However, to avoid relitigation of these issues when and if another discharge hearing and resentencing occurs, the following guidance is offered to the district court.

### A.

### *Downward Departure*

We review de novo a district court's interpretation and application of the Sentenc-

ing Guidelines. *United States v. Blaize*, 959 F.2d 850, 851 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 2954, 119 L.Ed.2d 576 (1992); *United States v. Lawrence*, 916 F.2d 553, 554 (9th Cir.1990). We review the district court's factual findings in the sentencing phase for clear error. *United States v. Chapnick*, 963 F.2d 224, 226 (9th Cir.1992).

■ When it sentenced Hunter, the district court granted a downward departure in sentencing under U.S.S.G. § 5K2.13, because the court found that Hunter was "suffering from a significantly reduced mental capacity at the time of the commission of the offense." Guideline § 5K2.13 states:

> If the defendant committed a *non-violent* offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

U.S.S.G. § 5K2.13 (1989) (emphasis added). For this provision to apply, the defendant must have committed a nonviolent offense. This circuit has defined a crime of violence in § 5K2.13 as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *United States v. Borrayo*, 898 F.2d 91, 94 (9th Cir.1989) (citing 18 U.S.C. § 16(a)).

Hunter was convicted of threatening to kill the President of the United States and to assault federal judges. This crime clearly involved the threatened use of physical force to harm another. Hunter emphasizes he was in custody at the time he made those threats and thus was physically unable to carry them out. However, actual ability to carry out such threats is immaterial. *See, e.g., United States v. Borrayo*, 898 F.2d 91 (9th Cir.1989) (unarmed bank robbery, where the robber has threatened to use weapons he does not have, is nonetheless a "crime of violence" which pre-

vents application of § 5K2.13); *United States v. Sanchez*, 933 F.2d 742 (9th Cir. 1991).

Because Hunter's threats to kill and assault federal officials is a crime of violence, the district court erred in applying U.S.S.G. § 5K2.13.

**B.**

*Official Victim Enhancement*

■ The government argues the district court erred in not increasing Hunter's offense level upward by three points for threatening a federal judge based on the judge's official status. U.S.S.G. § 3A1.2 (1989) states: "If (a) the victim was ... an officer or employee included in 18 U.S.C. § 1114 ... and the offense of conviction was motivated by such status ... increase by 3 levels." Federal judges are included in the provisions of 18 U.S.C. § 1114 (1988). Section 3A1.2 applies when "specified individuals are victims of the offense" and not "when the only victim is an organization, agency, or the government." U.S.S.G. § 3A1.2, comment. (n.1).

The district court refused to apply this sentence enhancement because it found "[t]he defendant's threatening letter was addressed primarily to the system and to the Court as an institution, rather than to individual judges." That determination is clearly erroneous and is inconsistent with the factual determinations made by the jury. Hunter was convicted for threatening federal judges, in violation of 18 U.S.C. § 115. The jury instructions listed three of the threatened judges by name. The indictment under which he was convicted stated that Hunter "did willfully and knowingly make a written threat to assault United States judges with intent to impede, intimidate, and interfere with such judges while engaged in the performance of their official duties, and to retaliate against such judges on account of the performance of their official duties." The jury found Hunter guilty on this count. Therefore the factfinder concluded that Hunter threatened federal judges, not the court system as an institution, and that he was so moti-

vated by the judges' official status. This finding meets the requirements of U.S.S.G. § 3A1.2 and mandates the application of a three-level enhancement.

Hunter's letter itself indicates the threats were directed at specific judges. Although the letter criticizes "judicial conferences in Hawaii" and questions the court's "manner of doing justice", it also mentions three federal judges by name. Each of these judges had played a role unfavorable to Hunter in prior litigation. Hunter threatened to "wake up" those judges "with a pistol in each hand." Such language goes beyond a critique of the court as an institution and fully warrants the application of the three-level enhancement authorized by U.S.S.G. § 3A1.2.

### C.

#### *Sentence Credit*

The district court granted Hunter credit on his twenty-seven month sentence for the time he had been incarcerated since his arraignment. The government disputes this credit and maintains the Bureau of Prisons had already applied part of this time as credit on a prior sentence Hunter was serving. Such double credits are prohibited under 18 U.S.C. § 3585(b) (1988).

The resolution of this issue has been greatly simplified by a Supreme Court decision rendered after the district court imposed sentencing in this case. In *United States v. Wilson,* —— U.S. ——, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992), the Supreme Court held that under 18 U.S.C. § 3585(b), a district court lacks the authority to award a defendant credit for time spent in official detention prior to sentencing. *Id.* at —— ——, 112 S.Ct. at 1354–55. Rather, the Attorney General, through the Bureau of Prisons, is responsible for administering the sentence and determining the amount of the defendant's jail-term credit. *Id.* This decision overruled our decision in *United States v. Chalker,* 915 F.2d 1254 (9th Cir.1990), which allowed the district court to grant credit for time served. The *Wilson* decision has now been applied in this circuit. *United States v. Checchini,* 967 F.2d 348 (9th Cir.1992).

Therefore the district court lacked the authority to award Hunter credit for time served and its awarding of credit was in error.

### IV

### CONCLUSION

A defendant committed to a psychiatric facility pursuant to 18 U.S.C. § 4244 may not file a pro se motion for a discharge hearing under 18 U.S.C. § 4247(h). Accordingly, the district court's decision is VACATED and REMANDED for further proceedings consistent with this opinion.